# No. 25-40197

# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

Christopher Shaw,

Plaintiff - Appellant

v.

James Thomas Gillen, in his individual capacity,

Defendant - Appellee

---

## On Appeal from

United States District Court for the Eastern District of Texas

1:22-CV-283

## BRIEF OF APPELLEE JAMES GILLEN

SUBMITTED BY:

Alex Joseph Stelly
Frederick Blair Clarke
Calvert Eaves Clarke & Stelly, L.L.P.
2615 Calder Avenue
Beaumont, TX 77702

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| James Gillen | Frederick Clarke of Calvert Eaves Clarke & Stelly, L.L.P. Beaumont, TX |
| James Gillen | Alex Stelly of Calvert Eaves Clarke & Stelly, L.L.P. Beaumont, TX |

| Appellants: | Counsel for Appellants: |
|---|---|
| Christopher Shaw | Harry Daniels of Law Offices of Harry M. Daniels Atlanta, GA |
| Christopher Shaw | Chance Lynch of Lynch Law, P.L.L.C. Charlotte, NC |
| Christopher Shaw | Benjamin L. Crump Ben Crump Law, PLLC |
| Christopher Shaw | Demetria C. Howard Howard Watkins, PLLC |
| Christopher Shaw | Chimeaka L. White The White Law Firm, PLLC |

<u>S/Alex Joseph Stelly</u>
Attorney of record for Defendant – Appellee

i

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will **_not_** assist the Court in maintaining a focus on the established law as applied to the facts.

# TABLE OF CONTENTS

Contents……………………………………………………………….Pages(s)

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF CONTENTS........................................................................iiiii

TABLE OF AUTHORITIES ...............................................................1

JURISDICTIONAL STATEMENT ...................................................6

STATEMENT OF THE ISSUES.........................................................6

STATEMENT OF THE CASE.............................................................6

SUMMARY OF THE ARGUMENT ...................................................12

ARGUMENT .....................................................................................13

I.     Standard of Review

II.    Did the district court make an error in concluding the Second Amended Complaint presented as a single violent encounter during which Appellee Gillen used excessive force and Appellant was wholly innocent? No.

III.   Did the district court's oversight in failing to consider the Appellant's significant assertions regarding excessive use of force, particularly the claim of being choked by the Appellee warrant a reversal? No.

IV.    Did the district court make an error in concluding that Appellee Gillen's use of force towards the Appellant did not occur in divisible stages or when the Appellant was restrained? No.

V.    Was Defendant Gillen's Use of Force Against the Plaintiff that resulted in Plaintiff's Quadriplegia excessive and objectively Unreasonable? No.

VI.   Was Defendant Gillen Not Entitled to Qualified Immunity from Suit Because His Actions Were Objectively Unreasonable Under Then Existing Clearly Established Law? No.

CONCLUSION .......................................................................................................42

CERTIFICATE OF SERVICE ................................................................................43

CERTIFICATE OF COMPLIANCE ......................................................................44

# TABLE OF AUTHORITIES

**Cases**………………………………………………………………….Pages(s)

*Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020)………………………………34

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011)..32, 33

*Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir. 2020).  …………………….……15, 16

*Baker v. Putnal*, 75 F.3d 190, 198-99 (5th Cir. 1996) ………………...….……..21

*Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) …………………….……15

*Bell v. Wolfish*, 441 U.S. 520, 547 (1979) …………………………….……..23

*Brewer v. Geerdes*, Civ. Act. No. H-19-1219, 2020 U.S. Dist. LEXIS 177399 (S.D. Tex. 2020) …………………….………………………………………………..37

*Calhoun v. Wyatt*, Civil Action No. 6:11cv4, 2013 WL 1882367 (E.D. Tex. 2013).25

*Carroll v. Ellington*, 800 F.3d 154, 176 (5th Cir. 2015) …………..………………24

*Cooper v. Morales*, 535 Fed. App'x. 425, 429 (5th Cir. 2013)…………………..…34

*Craig v. Martin*, 2022 U.S. App. LEXIS 25242 (5th Cir. 2022)….…..……….25, 37

*Crawford v. Pitts*, 4:20-cv-01119-0, 2022 WL 479959 (N.D. Tex. 2022)……..16, 18

*Daigre v. City of Waveland*, 549 F. App'x 283, 286-87 (5th Cir. 2013) ………….16

*Defrates v. Podany*, 789 Fed. Appx. 427, 434-35 (5th Cir. 2019 …………………38

*Deleon v. City of Corpus Christi*, 488 F.3d 649, 656 and 652 (5th Cir. 2007) …….15

*Delpit v. Baton Rouge City Police*, Civ. Act. No. 16-00026-JWD-EWD, 2018 U.S. Dist. LEXIS 103974 (M.D. La. 2018) …………………….……………..………..26

*Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)……..……..………..…..24

*Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000). ……………………..……34

*Elliot v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985) ……………………..……30

*Escarcega v. Jordan*, 701 Fed. Appx. 338, 341 (5th Cir. 2017) ……………….…..31

*Estate v. Davis v. City of N. Richland Hills*, 406 F.3d 375,380 (5th Cir. 2005…..…31

*Fairchild v. Coryell County*, 40 F.4th 359, 367-68 (5th Cir. 2022) …………...…39

*Flores v. City of Palacious*, 381 F.3d, 395 (5th Cir. 2004) …………………...…31

*Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010)…………...24

*Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) …..…30, 31, 32, 33, 34, 35, 39, 40

*Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998))…….....….…32

*Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 639 (5th Cir. 1996) …….……21

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) …….30

*Heck v. Humphrey*, 512 U.S. 477 (1994) ………...…..…6, 12, 14, 16, 17, 18, 20, 29

*Hernandez v. City of Lubbock, Tx.*, 634 Fed. Appx. 119, 122 (5th Cir. 2015) …….26

*Hewitt v. Helms*, 103 S. Ct. 864 (1983) …………………………………...…23

*Holm v. Sassenhagen*, 2022 U.S. App. LEXIS 24138 (5th Cir. 2022)…………...38

*Hope v. Pelzer*, 536 U.S. 730,741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)…...34

*Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996)………………………...…15

*Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) ………………..………21

*Johnson v. Harris Cnty.*, Civ. Act. No. H-21-1558, 2022 U.S. Dist. LEXIS 163686 (S.D. Tex. 2022 )………………………..……………………………26, 38

*Johnson v. Hill*, 514 F. Supp. 3d 958 (S. D. Tex. 2021)…………………….…..25

*Jones v. N. Carolina Prisoner's Labor Union*, 433 U.S. 119, 132 (1977) ……….23

*Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020)……………………………31

*Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) ……………………………………………………………21, 22, 23, 25, 26, 39

*Kitchen v. Dallas Cty.*, 759 F.3d 468, 477 (5th Cir. 2014) ……………………..21, 40

*Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)..…31, 34

*Martin v. Seal*, 510 Fed. App'x 309, 313 (5th Cir. 2013)…………………………22

*Michalik v. Hermann*, 422 F.3d 252, 262 (5thCir. 2005) …………………….....30

*Minix v Blevins,* Civil No. 6:06-306, 2007 WL 1217883 (E.D. Tex. 2007) . . . . . .25

*Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) ………………….……34

*Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015). ……..…..…..33

*Narro v. Edwards*, 829 Fed. Appx. 7, 12-13 (5th Cir. 2020) ………..…………..37

*Orr v. Copeland*, 844 F.3d 484, 492-93 (5th Cir. 2016)…………………..…...24

*Pell v. Pocunier,* 417 U.S. 817, 823 (1974) ………………………………………23

*Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)…..30,32

*Plumhoff v. Rickard*, 572 U.S. 765, 134 S. Ct. 2012, 2019, 188 L. Ed. 2d 1056 (2014) ………………………………………………………………30, 31, 32, 33

*Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) ……………..24,26

*Priest v. Grazier*, 860 Fed. Appx. 343, 347-349 (5th Cir. 2020) …………………37

*Procunier v. Martinez*, 416 U.S. 396, 404 (1974) ……………………………..…23

*Ray v. Recovery Healthcare Corp.*, No. 22-10303, 2022 U.S. App. LEXIS 31557, 2022 WL 16945898 (5th Cir. 2022)(per curium)…………………………………15

*Rios v. McBain*, Civil No. 5:04-84, 2005 WL 1026192 (E.D. Tex. 2005)………...25

*Sanchez v. Griffen*, 569 F. Supp. 3d 496, 511-14 (W.D. Tex. 2021) ……...22, 25, 38

*Sappington v. Bartee*, 195 F.3d 234, 236-37 (5th Cir. 1999) …………………………15

*Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).27

*Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984)…………………….……25

*Stogner v. Sturdivant*, 515 F. App'x. 280, 282 (5th Cir. 2013) ………..…………30,31

*Surratt v. McClaran*, 234 F. Supp. 3d 815, 827-31 (E.D. Tex. 2016) …………….32

*Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)) …………….…..……33, 34

*Tennyson v. Villarreal,* 801 Fed. Appx. 295, 295-96 (5th Cir 2020) …………...38

*Thompson v. Beasley*, 309 F.R.D. 236, 249 (N.D. Miss. 2015)………………22, 25

*Tucker v. Shreveport*, 998 F.3d 165, 180 (5th Cir. 2021). ……………………26, 38

*Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993) ……………..…..…21

*Waddleton v. Rodriguez*, 750 Fed. Appx. 248, 255 (5th Cir. 2018) ………22, 26, 37

*Wagner v. Bay City, Tex.*, 227 F.3d 316, 321 (5th Cir. 2000) …………….…..…..31, 32

*United States v. Sanders*, 994 f.2d 200, 209 (5th Cir. 1993) ……………………40

*Walker v. Munsell*, 281 F. Appx. 388, 390 (5th Cir. 2008)………………………..16

*White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017)……… 30, 33

*Wilkens v. Gaddy*, 559 U.S. 34 (2010) ……..………………………………….…22

*Wilson v. Rheams*, 494 F. App'x 469, 470 (5th Cir. 2012) ………………….……22

*Zimmerman v. Cutler*, 657 Fed. Appx. 340, 347, n.3 (5th Cir. 2016) …………..21

# JURISDICTIONAL STATEMENT

Appellee agrees with the Jurisdictional Statement put forth by Appellant.

# STATEMENT OF THE ISSUES

A. Did the district court make an error in concluding the Second Amended Complaint presented as a single violent encounter during which Appellee Gillen used excessive force and Appellant was wholly innocent?

B. Did the district court's oversight in failing to consider the Appellant's significant assertions regarding excessive use of force, particularly the claim of being choked by the Appellee warrant a reversal?

C. Did the district court make an error in concluding that Appellee Gillen's use of force towards the Appellant did not occur in divisible stages or when the Appellant was restrained?

D. Was Defendant Gillen's Intentional and Deliberate Unlawful and Excessive Use of Force Against the Plaintiff, objectively Unreasonable that resulted in the Plaintiff's Quadriplegia?

E. Was Defendant Gillen Not Entitled to Qualified Immunity from Suit Because His Actions Were Objectively Unreasonable Under Then Existing Clearly Established Law?

# STATEMENT OF THE CASE

This case was decided via a motion for summary judgment based upon *Heck v. Humphrey*, 512 U.S. 477 (1994) and involves the use of force applied to a continuously resisting and non-compliant detainee once inside the jail who was subsequently convicted of assaulting a police officer during said incident.

ROA.1518 - ROA.1530. Appellee disagrees with Appellant's Statement of the Case, as phrased, and therefore, submits its own Statement of the Case.

Once inside the Jail, Shaw went from passive to aggressive, resistance, using physical force to push against Gillen and the Correctional Officers. He was *actively resisting the entire time*. Gillen denied applying a chokehold, but instead, at one point, attempted to grab Shaw by the lower jaw near the mandibular angle pressure point and hold Shaw's head back against the wall with Gillen's right hand. However, as Gillen attempted to apply this pressure point hold, due to Shaw's own movements and resistance, Gillen ended up, having his hand begin to slide to where he is *momentarily, and for a second,* grabbing the underside of Shaw's jaw, with Gillen's thumb near the neck *area;* however, once he realized same, Gillen immediately removed his hand from the neck area. Gillen also momentarily used his left forearm in the neck and clavicle area with *no compression* applied to the throat (no choke hold). *Gillen* later used his left arm across Shaw's clavicle, and below, and on the right side, of the neck *area*, with *no constriction* on his throat. Gillen further testified, at this point in time, no one had Shaw under control. Shaw also used his legs and feet and intentionally and knowingly began to kick Gillen, which Gillen felt, and Gillen tried to reposition, back up, and get out of the way. ROA.947 – 967. (*See* Ex. "A," p. 82:5-22, 88:15-17, 90:2 -5, 90:15-91:4, 93:5-94:15, 102:3-11, 103:16-19, 109:19-23, 110:19-111:4-6, 115:16-22, 117:10-19, 118:17-24, 119: 13-

7

24, and 126:16-127:6).

After being kicked, Gillen placed his left hand on Shaw's chest as his right hand was on Shaw's left shoulder to hold Shaw (who was *still actively resisting*), against the wall, and keep him from getting loose. Next, Gillen **did not grab, pull on, or throw** Shaw, but instead, Shaw continued to resist, and *suddenly* came off away from the wall with momentum, bounced into Gillen which caused Shaw to spin, and they possibly got their feet tangled, and they both start to fall back away from the wall to the ground**,** as Gillen held on to Shaw during the fall and began twisting Shaw in Gillen's attempt to control their fall (which he admittedly had no control) and protect both of them, and minimize the impact for both, since **neither** of them would be able to brace themselves for impact. ROA.955 - 972. (*See* Ex. "A," 104:11-23, and 105:23-106:17, 113:5-8, 127:9-129:1, and 130:3-132:17).

Officer Gillen's body cam video and the Jail videos (including some still photos taken therefrom – ROA.994 – 1004. (Ex. "H1" - "H11"), show Shaw continuing to aggressively yell and cuss, as Gillen holds Shaw's left shoulder/arm area, and walks Shaw from the sally port into the jail facility. While entering into the book-in area, Shaw looks back at Gillen, having previously yelled and cussed aggressively, and saying "for real" "for real man" and Gillen tells Shaw to quit, and noting female and male medical staff were close by. Plaintiff loudly and aggressively says "for real" again, and they are "trying to kill me," then, turns and

yells something in a jail officer's face, and then says, "Hell no!," as he leans forward pulling down and away from Gillen, and Gillen instructs Shaw to "Quit!." Shaw then stands more upright and cusses and looks back at Gillen and yells "Hell no!" Gillen instructs Shaw to "Stop!," and Shaw aggressively lunges at Gillen and yells "Hell no!," again. Gillen then tries to regain control of Shaw, by instructing Shaw again to "Stop!," and while still holding Shaw's paperwork and clothing in his left hand Gillen also tries applying a pressure point hold with his right hand being placed on Shaw's lower jaw to hold him against the wall, which hold ends up *momentarily* sliding down to the lower neck left shoulder area, as Shaw moves, struggles/resists/kicks, and two other officers assist with Shaw's resistance by pushing Shaw, and attempting to hold/control Shaw, against the wall, as Shaw continues to struggle/resist all of them, pushing forward into officers and away from the wall, and continues to yell "Hell no!" approximately four more times. Another officer tries to assist from the side. As Shaw continues to resist, and come off the glass wall, he kicks Officer Gillen and Officer Gillen pulls back his waist area in response, and decides to use two hands, casting Shaw's paperwork and other items he is holding in his left hand to the side. With his right hand already on Shaw's left shoulder, Gillen next starts to bring his left hand toward Shaw' chest area, and Gillen places his **open** left hand on the middle of Shaw's upper chest and Gillen, along with others, push Shaw back to the glass wall to hold him there. However, while Gillen

9

and another Correctional Officer are still squared up *leaning forward* and pushing forward against Shaw, and holding Shaw against the wall, with Gillen still using his *open* left  hand pushing against, and *leaning into* Shaw's chest, and with Gillen's right hand still on Shaw's shoulder, Shaw *suddenly begins to move forward and away from the wall* as he simultaneously twists sidewise, putting his left shoulder and left side of his face forward, and *Shaw continues pushing out and away from the wall*, and *in between Gillen and a Correctional Officer* ROA.1001 – 1002. (Exs. "H8-H9").   As Shaw *pushes through* and impacts the Correctional Officer and Gillen, *and gets the top of his head just past Gillen* (*Id*.), Gillen has not even made a step backward, but Gillen, *as Shaw is attempting to push past him*, manages to hook Shaw's left shoulder/clavicle area with Gillen's left hand that was previously pressing flat on Saw's chest, and Gillen almost simultaneously slides his right arm from Shaw's right shoulder to under Shaw's right arm, *and Gillen having been impacted by Shaw then holds on with both arms*, as he is *knocked backward by Shaw's momentum*, and Gillen then attempts to control the fall by twisting to his left and looking down over his left shoulder ROA. 1003. (Ex. "H10"), as they both go to the ground without being able to brace for the fall.  The Jail videos reveal that Gillen, **not** Shaw, actually hits the ground first, initially impacting Gillen's left knee and then impacting Gillen's left forearm/elbow ROA.1004. (Ex. "H11").  Next, for the first time, Gillen yells instructions that Shaw stay down, while another officer

helps Gillen hold him down, and Gillen fairly quickly releases Shaw to the other officers and requests a supervisor. Even while going to the ground, Shaw continues to struggle/resist and says, "Hell no!" one more time. During this incident, the video shows, in addition to Shaw continuously refusing to comply and verbally and physically resisting all of the officers, Shaw lifting his left leg kicking and/or kneeing Officer Gillen ROA.992 (Ex. "G," 0:00:49-52). At no time during this incident did Shaw ever comply with Gillen's repeated instructions to quit or stop, and at no time did Shaw stop physically and verbally resisting the officers present. This incident, from the time Shaw leaned forward pulling away from Gillen and Gillen instructing Shaw to "Quit!," up until the time they both went to the ground, lasted approximately **_15 seconds_**. ROA.989. (*See* Ex. "D," 0:02:22 - 0:03:18, Gillen's Body Camera video/audio) and ROA.991 (Ex. "F," 0:01:30-0:01:54, Jail Video of Book-in area – Close Angle, exacqVision Media Player, 2023-08-21 11-53-01 Crystal Carey mp4,[1]) and ROA.992 (Ex. "G," 0:00:30-0:01:15, Jail Video of Book-in area – Distance Angle, exacqVision Media Player, 2023-08-21 10-37-42 Crystal Carey mp4), and ROA.993 – 1004 (Exs. "H1-H11," still frames from the Jail videos).

Gillen charged Shaw with Public Intoxication and Assault on a Public Servant (PC 22.01(b)(1), a third-degree felony, and submitted a P.C. Affidavit on the assault

---

[1] *See also* close up Jail Video ROA.1005 (Ex. "I," 4:53:25 – 4:53:48 (V BPD Upper Angle Shot Crystal Carey – 22 – BOOKING B9 CELL), which video is in a format capable of using a frame-by-frame analysis.

asserting Shaw becoming aggressive at the Jail and kicking Gillen in the shins and also kneeing Gillen in the groin causing pain.  On August 15, 2023, **Shaw pled guilty to both**, did not assert self-defense, and received 4 years of deferred adjudication on assaulting a peace officer. ROA.982 – 983. (*See* Ex. "A," p. 176:7-14 and 178:4-25 and attached deposition Ex. 5, ROA.986. Gillen's Probable Cause Affidavit), and ROA.1006 – 1022. (Ex. "J," Court documents - Agreed Punishment Recommendation, Written Pea Admonishment and Deferred Adjudication Order - and transcript establishing Shaw's Guilty Plea of Assaulting Officer Gillen), and ROA.1045 – 1050. (Ex. "K," p. 80:15-84:17 and 86:6-20, Excerpts from Deposition of Shaw), and ROA.1053 (Ex. "L.").

## SUMMARY OF THE ARGUMENT

Appellee contends this case was properly decided based upon the *Heck v. Humphrey* defense.  Appellant, in his Second Amended Complaint essentially contends he did nothing wrong during the incident and did not assault Officer Gillen.  Conversely, as established above, Plaintiff subsequently pled guilty to assaulting Officer Gillen, and did not assert self-defense.  In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court decided that a Plaintiff cannot bring a 1983 civil suit that conflicts with, or collaterally attacks the validity of, a previously litigated criminal conviction.  In other words, in a 1983 case, a court must consider whether a civil

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction; if it would, the complaint must be dismissed.   Appellant's pleading has done so here, as Appellant's Second Amended Complaint asserts he did not assault Gillen, but his conviction for assault, as well as the video, establishes that he did. More specifically, Plaintiff's Second Amended Complaint asserts, "[w]hile Mr. Shaw was being physically restrained by JCCF officers, … Mr. Shaw raised his leg. Mr. Shaw did not make contact with Defendant Gillen or any JCSO officers[;]  [i]n fact, at no time did Shaw attempt to strike or assault Defendant Gillen or any JSCO officers," and "Mr. Shaw was not a danger to himself or others," "he was not a physical threat to anyone." ROA.407 -408.  Further, the entire incident at issue was 90 seconds or less, and Appellant resisted the entire time, and never stopped, and therefore, the incident at issue is not divisible into separate use of force incidents. Accordingly, summary judgment was properly granted by the trial court in Appellee's favor based on *Heck*.

## ARGUMENT

### I.     Standard of Review

Appellee does not disagree with the standard of review put forth by Appellant.

**II.     Did the district court make an error in concluding the Second Amended Complaint presented as a single violent encounter during which Appellee Gillen used excessive force and Appellant was wholly innocent? No.**

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the U. S. Supreme Court held that "in order to recover damages for allegedly unconstitutional … harm caused by actions whose unlawfulness would render a [criminal] conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. …" *Id.* at 486-87.  Otherwise, "[a] claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983." *Id.* at 487 (emphasis added).  "Thus, when a [convicted person] seeks damages in a §1983 suit, the district court must consider whether a [civil] judgment in favor of the plaintiff would necessarily imply the invalidity of his [criminal] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the [criminal] conviction or sentence has already been invalidated." *Id.*  "But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.*

14

In sum, "a convicted criminal may not bring a [civil] claim under 42 U.S.C. §1983 if success on that claim would necessarily imply the invalidity of a prior criminal conviction." *Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir. 2020). This "is because [the Fifth Circuit] do[es] not allow the use of § 1983 to collaterally attack a prior criminal proceeding, out of concern for finality and consistency." *Id*. (citing *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006)). "So[,] an inmate cannot bring a § 1983 [civil] claim for excessive use of force by a prison guard, if the inmate has already been found guilty for misconduct that justified that use of force." *Id.* Important here, the Fifth Circuit has already held that "a deferred adjudication order is a [sentence or] conviction for purposes of *Heck's* favorable termination rule." *Deleon v. City of Corpus Christi*, 488 F.3d 649, 656 and 652 (5th Cir. 2007); *see also Ray v. Recovery Healthcare Corp.*, No. 22-10303, 2022 U.S. App. LEXIS 31557 at * 5-8, 2022 WL 16945898 (5th Cir. Nov. 15, 2022)(per curium)(followed and applied *Deleon* to a suspended sentence and community supervision (probation) for seven years, and a subsequent probation modification order). Also, preclusion of excessive force claims based upon *Heck*, where there was a subsequent conviction for assaulting a peace officer, have been upheld by the Fifth Circuit. *Deleon*, 488 F.3d at 656-57; *Sappington v. Bartee*, 195 F.3d 234, 236-37 (5th Cir. 1999); and *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996).

"To avoid dismissal under *Heck*, a plaintiff must clear two hurdles. First, there must be no inherent inconsistency in a plaintiff's complaint and his underlying conviction." *Crawford v. Pitts*, 4:20-cv-01119-0, 2022 WL 479959, at *7 (N.D. Tex. Feb. 16, 2022). "A plaintiff must not allege absolute innocence throughout the law enforcement encounter because such a position would necessarily be contradicted by a subsequent conviction for assault on the responding public servant." *Id.* (citation omitted); *Daigre v. City of Waveland*, 549 F. App'x 283, 286-87 (5th Cir. 2013)(if plaintiff alleges he did not physically assault or resist officers, same "relate[s] to the entire arrest encounter, and not merely a discrete part of it[,] [and] [t]he result is dismissal under *Heck*.")(internal citation omitted)). For instance, if a plaintiff is contending in his 42 U.S.C. §1983 "*[C]omplaint"* that his attack was "unprovoked" or "that he is wholly blameless for the use of force against him," same would "necessarily [be] inconsistent with the validity of the conviction" against plaintiff for assault, and "barred by *Heck*." *Aucoin*, 958 F.3d at 383 (emphasis added)(citations omitted). In other words, "when a plaintiff's claim 'is based solely on his assertions that he ... did nothing wrong, and was attacked by the [] officers for no reason,' that suit 'squarely challenges the factual determination that underlies his conviction' [*i.e.*, a conviction for "defiance" in this *Aucoin* case and/or "assault on a peace officer" in the case at issue here] and is necessarily at odds with the conviction." *Id.* (quoting *Walker v. Munsell*, 281 F. Appx. 388, 390 (5th Cir.

2008)(per curiam). The *Aucoin* decision went on to say, "[i]t is precisely this 'type of claim that is barred by *Heck* in [the Fifth] [C]ircuit.'" *Id.*

We have just such a claim here. Applying the law and evidence above, Gillen prepared a Probable Cause Affidavit and filed charges on Plaintiff for Assault on a Public Servant, through *Texas Penal Code* § 22.01(b)(1), and same is based upon Plaintiff's assault on Gillen while in the Jefferson County jail facility, and Plaintiff has pled guilty to same and received 4 years of deferred adjudication. ROA.982 - 983 (*See* Ex. "A," p. 176:7-14, 178:4-25 and ROA.986. - attached deposition Ex. 5), ROA.1006 – ROA.1021 (Ex. "J"), and ROA.1045 – 1050 (Ex. "K" p. 80:15-84:17 and 86:6-20). Plaintiff's Second Amended Complaint, admits he "walked inside the JCCF [Jefferson County Correctional Facility] with full functional use of all his extremities." ROA.407. (¶ 18). He also pleads that "[o]nce inside the facility, Mr. Shaw became irritated and refused to comply with the officer's commands." *Id.* He also admits that "[w]hile Mr. Shaw was being physically restrained by JCCF officers, … Mr. Shaw raised his leg. [But] Mr. Shaw [alleges he] did not make contact with Defendant Gillen or any JCSO officer." *Id.* He also pleads, "at no time did [Plaintiff] attempt to strike or assault Defendant Gillen or any JCSO officers," and that Plaintiff was under "full and complete control" and "physically restrained" and "was not a danger to …. others" and "not a physical threat to anyone." *Id.* (¶¶ 18-19). In other words, Plaintiff's Second Amended Complaint

puts forth a single violent encounter where Plaintiff did nothing wrong, nor did he use any force against, or even touch, or assault, Defendant Peace Officer Gillen, or apparently anyone else, and was wholly innocent, and his excessive force claim is not separable from the admitted facts resulting in his conviction.  So, Plaintiff's recent conviction/guilty plea regarding assault on Officer Gillen, unequivocally and directly contradicts the pleadings within Plaintiff's 42 U.S.C. §1983 excessive force Complaint, and vice versa, as Shaw admitted to the lawfulness of Gillen's conduct. Consequently, as a matter of law, *Heck* clearly bars Plaintiff's 42 U.S.C. §1983 claims for excessive force alleged against Gillen.  ROA.1518 - ROA.1530.

Even if Plaintiff overcomes the first hurdle, which he has not, the second hurdle requires plaintiff to show "(1) his detention occurred in divisible stages, and (2) the officers exerted excessive force after he was restrained and complaint." *Crawford*, 2022 WL 479959, at *7 (citation omitted).  Plaintiff cannot show divisible stages, as the video evidence here shows the use of force occurred during a short 50 second single incident where plaintiff was never restrained, nor securely detained, nor compliant.  The trial court noted the following from the video with respect to whether Shaw was securely detained (ROA.989):

"1.   Shaw is cursing and yelling at Gillen and the JCCF officers as they escort him into the JCCF while handcuffed behind his back (Exhibit D, 2:30 – 2:35); []

2.   Once inside the JCCF, Shaw continues to curse and pull away from Gillen and one JCCF officer.  Gillen gives verbal commands to Shaw to

18

'quit' two times while Shaw continues to yell profanities and pull away from them. This prompted another JCCF Officer to assist in restraining Shaw. Shaw looks at Gillen and says 'that's fu---- up' to which Gillen responds 'stop.' Shaw continues to ignore the verbal commands saying, 'hell no' while looking at Gillen (Exhibit D, 2:36-2:50);

3.  Shaw yells "hell no" again appearing to lunge towards Gillen who tells him again to 'stop' and then uses his right arm to push Shaw back to the wall, placing his right hand under Shaw's left ear and chin. One JCCF officer is seen holding Shaw's right arm while another JCCF officer is seen pushing him back with his hands placed on Shaw's chest/abdomen area (Exhibit D, 2:51-2:54);

4.  Shaw is seen kicking towards Gillen yelling 'fu--, no' while Gillen continues to give the verbal command 'stop' and using his right arm to push Shaw back and the two JCCF officers continuing to push Shaw toward the wall (Exhibit D, 2:52 – 2:55);

5.  The two JCCF officers change positions in response to Shaw's movements and one is seen holding Shaw with both hands at his chest level while the other holds Shaw's right arm. Shaw is continuing to yell 'hell, no' repeatedly looking at Gillen who says 'stop.' Shaw again fails to respond to the verbal command. While Shaw is moving away from Gillen, Gillen's right hand moves from Shaw's neck area to the top of Shaw's left shoulder and clavicle. Below Gillen's hand, a fourth JCCF officer's hand is seen moving to grasp Shaw's left arm. Shaw then moves toward the JCCF officer who is directly in front of him (Exhibit D, 2:56-2:58);

6.  Shaw is subsequently seen moving toward Gillen, where it appears Gillen is reaching for Shaw, and he turns Shaw to where Shaw's back is facing Gillen. Both Shaw and Gillen are then seen falling to the ground while Shaw continues to yell, 'hell no.' Shaw hits his head on the ground, and Gillen tells Shaw to 'stay down.' Gillen gets up while one JCCF officer holds Shaw to the ground. Shaw appears stunned and is bleeding from where he hit his head. Gillen has his hand on Shaw and calls for a supervisor (Exhibit D, 2:59-3:16).

These video facts establish a single discrete incident where Plaintiff was never

complaint and never stopped resisting, and Shaw's conviction for assaulting Gillen

is temporally and conceptually inseparable from his use of force claim such that a civil right verdict in favor of Plaintiff for use of excessive force would undermine Shaw's criminal conviction; accordingly, the *Heck* defense applies as found by the district court, and the excessive force claims are not actionable.

**III.  Did the district court's oversight in failing to consider the Appellant's significant assertions regarding excessive use of force, particularly the claim of being choked by the Appellee warrant a reversal? No.**

The alleged choking was an inseparable part of the single use of force incident and the trial Court's decision on the assault conviction being in conflict with the excessive force civil rights case, based upon the *Heck v. Humphrey* analysis, similarly applies to the alleged choking.  ROA.1518 - ROA.1530.  *See* Issue II above. Further, the video does not indicate Shaw choked Plaintiff.  ROA.989.

**IV.  Did the district court make an error in concluding that Appellee Gillen's use of force towards the Appellant did not occur in divisible stages or when the Appellant was restrained? No**

As stated in Issue II above, the trial court properly determined that this 50 second incident was not divisible into stages, and was barred by *Heck v. Humphrey*, and Plaintiff's assault conviction.  ROA.1518 - ROA.1530.   Again, the video facts establish a single discrete incident where Plaintiff was never compliant and never stopped resisting, and Shaw's conviction for assaulting Gillen is temporally and conceptually inseparable from his use of force claim such that a civil right verdict in

favor of Plaintiff for use of excessive force would undermine Shaw's criminal conviction; accordingly, the *Heck* defense applies.

## V. Was Defendant Gillen's Use of Force Against the Plaintiff that resulted in Plaintiff's Quadriplegia excessive and objectively Unreasonable? No.

The Court made its decision based on *Heck v Humphrey* and did not make its ruling of summary judgment in favor of Appellee based upon excessive force, or a lack thereof. ROA.1518 - ROA.1530. Therefore, this issue, is not properly before this Court. Still Appellee addresses same.

Unlike convicted prisoners in a jail facility, "pretrial detainees like [Plaintiff] are not protected by the Eighth Amendment." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016); *Zimmerman v. Cutler*, 657 Fed. Appx. 340, 347, n.3 (5th Cir. 2016) (citing *Kitchen v. Dallas Cty.*, 759 F.3d 468, 477 (5th Cir. 2014)); *see also Baker v. Putnal*, 75 F.3d 190, 198-99 (5th Cir. 1996)(same). The Fifth Circuit held, "in *Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc), '[t]he constitutional rights of a pretrial detainee … flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.'" *Kitchen*, 759 F.3d at 477.

While, in the Fifth Circuit, a *subjective* standard used to be applied in Fourteenth Amendment excessive force cases involving pretrial detainees (*see Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993)), since 2015, the U. S. Supreme Court has mandated an *objective* standard. In *Kingsley v. Hendrickson*, 576

U.S. 389, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015), the Supreme Court held

that instead of the *subjective* test, "the appropriate standard for a pretrial detainee's

excessive force claim is solely an objective one."   The Court held that in order to

prevail, "a pretrial detainee must show that the force purposefully or knowingly [as

opposed to negligently] used against him [or her] was objectively unreasonable." *Id*.

To determine the objective "reasonableness or unreasonableness of the force used,"

courts can consider the following non-exclusive factors: (1) "the relationship between

the need for use of force and the amount of force used;" (2) "the extent of the

plaintiff's injury;"[2] (3) "any effort made by the officer to temper[3] or to limit the

amount of force;" (4) "the severity of the security problem at issue;" (5) "the threat

---

[2] The Courts have noted with respect to "the extent of the injury suffered" element, that "[e]ven if Plaintiff's injuries were sever, this alone is not fatal to Defendants …," as "the Supreme Court has instructed courts to 'decide excessive force claims based upon the nature of the force rather than the extent of the injury.'" *Sanchez v. Griffin*, 569 F. Supp. 3d 496, 512 (W.D. Tex. 2021)(citing *Wilson v. Rheams*, 494 F. App'x 469, 470 (5th Cir. 2012)(quoting *Wilkens v. Gaddy*, 559 U.S. 34, 34 (2010))). Thus, in *Sanchez*, the court held, "[c]onsidering the nature of the force used (*i.e.*, takedowns of repeatedly non-compliant detainee) rather than the extent of the injury (which was horrific), the Court finds Defendants used force which was not grossly disproportionate to the need and was not in any way calculated to injure Plaintiff as severely as he was, in fact, injured." *See also Waddleton v. Rodriguez*, 750 Fed. Appx. 248, 255 (5th Cir. 2018)("Injury alone does not equate to excessive force. The issue is 'not whether a certain quantum of injury was sustained, …'").

[3] "The issuance of verbal orders constitutes an effort made to temper the severity of a forceful response." *Thompson v. Beasley*, 309 F.R.D. 236, 249 (N.D. Miss. 2015). Likewise, providing medical attention after the use of force is recognized as a means to temper the severity of the force used. *Martin v. Seal*, 510 Fed. App'x 309, 313 (5th Cir. 2013).

reasonably perceived by the officer" and (6) "whether the plaintiff was actively resisting." *Id.*

The Court cautioned that, "a court (judge or jury) cannot apply this standard mechanically." *Id.* "Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoted citation omitted). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoted citations omitted). The Court "recognize[d] that 'running a prison is an inordinately difficult undertaking' …, and that 'safety[4] and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 2474 (quoted citation omitted). "Officers facing disturbances 'are often forced

---

[4] The U.S. Supreme Court has long since recognized "[t]he safety of the institution's guards and inmates is perhaps the most fundamental responsibility of prison administration." *Hewitt v. Helms*, 103 S. Ct. 864, 872 (1983)(citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. N. Carolina Prisoner's Labor Union*, 433 U.S. 119, 132 (1977); *Pell v. Pocunier*, 417 U.S. 817, 823 (1974); and *Procunier v. Martinez*, 416 U.S. 396, 404 (1974)).

to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving.'" *Id.* (quoted citation omitted). "'Officers may consider a suspect's refusal to comply with instructions … in assessing whether physical force is needed to effectuate the suspect's compliance.'" *Orr v. Copeland*, 844 F.3d 484, 492-93 (5th Cir. 2016)(quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). "When dealing with an uncooperative suspect, police act within the scope of objective reasonableness when they 'react[] with measured and ascending responses.'" *Id.* at 493 (quoting *Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010)(per curiam)); *see also Carroll v. Ellington*, 800 F.3d 154, 176 (5th Cir. 2015)(qualified immunity upheld when Plaintiff failed to comply and resisted, and officers responded to same by striking plaintiff on the leg with a hickory stick, kicked him in the stomach, tackled him to the ground, struck him with their fists and finally tasered him several times – all nonlethal uses of force); *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)(finding officers' conduct objectively reasonable when, in response to the suspect's refusal to obey commands to turn around and give up his right arm for handcuffing and resisting, officers attempted to physically restrain him by the arm and when that failed, only then, resorted to a taser, and also took him to the ground after being kicked at – they responded with measured and ascending actions). "Disobeying orders poses a threat to the order and security of an institution," and "officers [can] reasonably perceive[] that [plaintiff's] disruptive actions were a threat

*despite the fact that he was restrained by handcuffs at the time*," or "regardless of whether or not the defiance is emanating from within a locked cell." *Johnson v. Hill*, 514 F. Supp. 3d 958, 968-69 (S. D. Tex. 2021)(citing *Minix v Blevins,* Civil No. 6:06-306, 2007 WL 1217883, at *24 (E.D. Tex. April 23, 2007) and *Rios v. McBain*, Civil No. 5:04-84, 2005 WL 1026192, at *7 (E.D. Tex. April 28, 2005); *see also Calhoun v. Wyatt*, Civil Action No. 6:11cv4, 2013 WL 1882367, at *6 (E.D. Tex. May 2, 2013)(noting that inmate's refusal to obey orders "set the stage for the use of force."); *Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984). The Fifth Circuit has considered various uses of force, including takedowns, on non-compliant handcuffed individuals and has held no excessive force was present.[5] The Fifth Circuit has also

---

[5] *Craig v. Martin*, 2022 U.S. App. LEXIS 25242, at *12-19 (5th Cir. Sept. 8, 2022)(It was an objectively reasonable use of force to use a pain maneuver on a non-compliant plaintiff, *by lifting up on plaintiff's handcuffed arms* to gain leverage on, or compliance by, the plaintiff, where plaintiff continued to physically resist arrest by pulling, twisting, and turning aggressively, attempting to walk away, yelling for help, looking at the officer, and shouting at the officer. Also striking a non-compliant juvenile plaintiff in the throat who was interfering with the arrest of another was objectively reasonable, as was taking another non-compliant juvenile to the ground for handcuffing, and later kicking the left leg of this non-complaint, *then handcuffed juvenile*, when she refused to pull her legs into the patrol vehicle); *Thompson v. Beasley*, 309 F.R.D. 236, 242-43 and 246-249 (N.D. Miss. 2015)(applying the *Kingsley* factors, on balance, the use of force was not excessive or objectively unreasonable, as the pretrial detainee plaintiff repeatedly refused to comply with orders given which resulted in taking plaintiff to the floor both before he was handcuffed, *and after he was handcuffed*, as plaintiff continued his failure to comply and attempted to break away from the officers); *Sanchez v. Griffen*, 569 F. Supp. 3d 496, 511-14 (W.D. Tex. 2021)(although plaintiff after being taken to the ground twice had his ribs fractured and his left lung punctured and collapsed leading to two surgeries, applying the *Kingsley* factors, on balance, the use of force was not

25

found no excessive force where a non-compliant, and/or resisting and/or possibly compliant unhandcuffed person was taken to the ground.  *See Poole*, 691 F.3d at 629; *Hernandez v. City of Lubbock, Tx.*, 634 Fed. Appx. 119, 122 (5th Cir. 2015); *Tucker v. Shreveport*, 998 F.3d 165, 180 (5th Cir. 2021).

---

excessive or objectively unreasonable in that the officers were reasonably restoring internal order and discipline and attempting to maintain institutional security, as the pretrial detainee plaintiff repeatedly refused to comply with orders given and walked away, which resulted in taking plaintiff to the floor before he was handcuffed, *and plaintiff pulled away after he was handcuffed and had to be taken to the floor again*, to apply leg shackles);  *Johnson v. Harris Cnty.*, Civ. Act. No. H-21-1558, 2022 U.S. Dist. LEXIS 163686, at * 7-11 (S.D. Tex. Sept. 9, 2022 )(*a handcuffed and shackled detainee* who had flooded his cell, failed to state an excessive force claim, when upon being instructed to re-enter his cell, he hesitated, and he was allegedly *pushed by an officer* into his cell, and he slipped on a wet floor injuring his arms and ribs, as  the use of force by the officer to ensure compliance was minimal and objectively reasonable); *Delpit v. Baton Rouge City Police*, Civ. Act. No. 16-00026-JWD-EWD, 2018 U.S. Dist. LEXIS 103974, * 25-28 (M.D. La. June 21, 2018)(While Plaintiff was *handcuffed and leg shackled*, he resisted  being placed in the cell; so, the Court held it *was objectively reasonable to take him down in the jail and fall on top of him*, and the officers were also entitled to qualified immunity);. *Waddleton v. Rodriguez*, 750 Fed. Appx. 248, 254-55 (5th Cir. 2018)(Although this is an Eighth Amendment case, same is instructive here, as the *Hudson* five-part analysis applied, also match five of the 6 *Kinglsey* factors.  The court found no excessive force based upon 4 of the 5 *Hudson* factors where the inmate, regardless of the severity of the injury, was taken down while handcuffed, *after* the inmate suddenly made a threatening movement away from the wall and toward the correctional officers and resisted restraint, which "created a need for the use of force and the relationship between the need for force and amount of force used – the takedown and subsequent restraint - was appropriate" and the officers "reasonably perceived [the inmate's] sudden action as a threat requiring the use of force,"  and  "instructing [the inmate] not to resist" was an "effort … to temper the severity of a forceful response." The Court also noted the officers were trying to maintain or restore discipline in the jail, which is another consideration under *Kingsley*).

26

At the summary judgment stage, video evidence can trump, or discredit, a witness's version of events. *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

The incident at issue is described above and is largely based on the video evidence. ROA.989. If we apply these ***rapidly*** evolving facts to the law that currently exists, based upon the *Kingsley* factors above: (1) even though Shaw was handcuffed, there was a need to use force as Plaintiff was a muscular individual believed to be high on some substance, who repeatedly yelled, was aggressive, cursed, lunged, opened his mouth as if attempting to bite, pulled away, pushed, resisted, and refused to comply with any verbal instructions to stop by Gillen, and who also admittedly assaulted Gillen by kicking his shins and kneeing his groin, and Shaw also suddenly pushed off the wall between two officers, with Gillen grabbing, securing and trying to control Plaintiff, as they both go to the ground, and Gillen, for the protection of himself and others, and to control the situation in the jail, and to maintain discipline, still reasonably used a low level of physical force - strength only (*i.e.*, at *no* time prior to Gillen and Shaw falling to the floor, did Gillen act unprofessional, act out of control, nor raise his voice, nor strike, punch, or kick Plaintiff, nor use his taser, O.C. spray, or asp/baton);  (2) there was limited opportunity to temper the severity of a forceful response, as Plaintiff, in a jail setting, suddenly, began pulling away and resisting and kicking Gillen in the shins and kneed him in the groin, and pushed off

27

the wall, and Gillen had to immediately react to protect others and to control the situation, with the only tools he had available at the time - his hands and physical strength and skill; however, Gillen did temper same by repeatedly giving Plaintiff verbal commands to stop, and by trying to hold Plaintiff against the wall with his free hand, by trying to control the fall with both of his hands/arms (note neither Gillen nor Shaw could brace for impact), and assisting EMS and medical providers at the hospital with Plaintiff when he could; (3) assaulting a peace officer and admittedly not following commands with officers in the jail presents a severe security problem within the jail and the jail cannot allow detainees and inmates to assault officers and/or continuously physically resist officers despite commands not to do so; (4) it was reasonable for Gillen, or any reasonable officer, to perceive a safety and security risk associated with Plaintiff resisting and not complying with officers and kicking Gillen in the shins and kneeing him in the groin and suddenly trying to push off the wall and break through Officer Gillen and the Correctional Officer; and (6) Shaw was admittedly irritated, high on something, and refused to comply with officer commands, was admittedly noncompliant, had to be continuously physically restrained, as he was "actively resisting" not only Gillen, but also three Jefferson County Jail officers, and Plaintiff was undeniably assaulting Gillen (and pled guilty to same), and potentially endangering Gillen, medical staff, and other officers present. Considering these factors, Gillen, for the protection of himself and others and to

maintain control and discipline within the jail facility, was constitutionally entitled to use the above described objectively reasonable force. Although Plaintiff was injured, his head hitting the floor was *accidental*, as he mainly fell on his right side.

As a closing note, officers cannot allow detainees to walk around jail facilities assaulting officers, or jail personnel, or medical staff or other inmates/detainees without risking the total loss of control, discipline and order in the jail facility. Jail and other officers cannot allow detainees to physically resist and/or fail to follow commands to stop resisting. Further, some degree of force will almost always be required to immediately respond and initially subdue, secure and control these unprovoked assaulting, physically resisting, and non-complaint individuals, such as Shaw. Gillen's discretionary reaction was thus, understandable, necessary, reasonable, and was not excessive force.

Therefore, under the current law, any Fourteenth Amendment excessive claim against Gillen is without merit.

**VI.  Was Defendant Gillen Not Entitled to Qualified Immunity from Suit Because His Actions Were Objectively Unreasonable Under Then Existing Clearly Established Law? No.**

The Court made its decision on *Heck v. Humphrey* and did not make its ruling of summary judgment in favor of Appellee based upon qualified immunity. ROA.1518 - ROA.1530. Therefore, this issue, is not properly before this Court. Still Appellee addresses same showing Gillen **was** entitled to qualified immunity.

Governmental law enforcement officers are entitled to qualified immunity from a 42 U.S.C. § 1983 claim if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). Gillen affirmatively asserted his qualified immunity from suit as against the federal claims alleged against him, because he was always performing his discretionary functions. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) ("In claims against [] officials under 42 U.S.C. §1983, the official may raise the affirmative defense of qualified immunity").

"[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Plumhoff v. Rickard*, 572 U.S. 765, 134 S. Ct. 2012, 2019, 188 L. Ed. 2d 1056 (2014)(citing *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)(quoted cite omitted)); *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551-52, 196 L. Ed. 2d 463 (2017). Accordingly, a pleading requirement must be met by Plaintiff requiring him to "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Elliot v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985); *Stogner v. Sturdivant*, 515 F. App'x. 280, 282 (5th Cir. 2013) (it is plaintiff's burden to negate the defense and conclusory allegations fail); *Michalik v. Hermann*, 422 F.3d 252, 262 (5thCir. 2005)(same). Plaintiff has failed to satisfy his pleading burden here. *See* Doc. 45, generally. Further, and equally important here, "[t]he plaintiff

has the burden to negate the defense of qualified immunity where, as here, it is properly raised." *Griggs*, 841 F.3d at 312)(citing *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir 2008)); *see also Escarcega v. Jordan*, 701 Fed. Appx. 338, 341 (5th Cir. 2017); *Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020). "In order to meet [this] burden, the plaintiff must show that 'the officers' actions were objectively unreasonable, in light of clearly established law at the time, and in light of, the information the officers possessed.'" *Stogner*, 515 F. App'x at 282 (*quoting Wagner v. Bay City, Tex.*, 227 F.3d 316, 321 (5th Cir. 2000); *Griggs*, 841 F.3d at 312 (same)(citations omitted). "Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Estate v. Davis v. City of N. Richland Hills*, 406 F.3d 375,380 (5th Cir. 2005)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Griggs*, 841 F.3d at 312 (same).

Under qualified immunity, the court must: (1) determine whether a constitutional right was in fact violated, *and* (2) whether a constitutional violation was clearly established at the time of the events in question and whether the officer acted unreasonably based upon clearly established law. *Plumhoff*, 134 S. Ct. at 2020-23 (citations omitted); *Griggs*, 841 F.3d at 312-313 (same)(citing *Flores v. City of Palacious*, 381 F.3d, 395 (5th Cir. 2004)). Courts can determine which prong to analyze first. *Plumhoff*, 134 S. Ct. at 2020 (citing *Pearson*, 555 U.S. at 236 and 242); *Griggs*,

841 F.3d at 313 ("The two steps of qualified immunity inquiry may be performed in any order.") (citation omitted).

The first prong, as it suggests, requires the Court to determine if Plaintiff has pled and can prove a constitutional right was violated by Defendant based upon current existing law.

However, even if an officer technically violated current federal Constitutional law (prong one), the officer is still entitled to qualified immunity under the second prong, "unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff*, 134 S. Ct. at 2023 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2077, 179 L. Ed. 2d 1149, 1153 (2011). Thus, "'even law enforcement officers who reasonably but mistakenly use excessive force are entitled to immunity.'" *Wagner v. Bay City*, 227 F.3d 316, 321 (5th Cir. 2000)(quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998)); *Surratt v. McClaran*, 234 F. Supp. 3d 815, 827-31 (E.D. Tex. 2016)(in a death case, the court, although initially noting "courts generally have not found that application of force to an arrestee's throat is objectively unreasonable," held in this case that same was an unreasonable use of excessive force; but nevertheless, still held that the officers were entitled to qualified immunity). "In excessive force cases 'the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly

established at the time of the incident; and if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Griggs*, 841 F.3d at 313 (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)).

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 134 S. Ct. at 2023 (*citing Ashcroft*, 131 S. Ct. at 2083). The Fifth Circuit has also noted the Supreme Court's further statement that, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Griggs*, 841 F.3d at 313 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Plumhoff*, 134 S. Ct. at 2023 (*quoting Ashcroft*, 131 S. Ct. at 2083); *Griggs*, 841 F.3d at 313 (same)(quoting *Mullenix*, 136 S. Ct. at 308)); *White*, 137 S. Ct. at 551-52 (same, and further noting clearly established law "should not be defined 'at a high level of generality' and "must be 'particularized' to the facts of the case" and thus, the court must "identify a case where an officer acting under similar circumstances [] was held to have violated the Fourth Amendment."). "[T]he salient question …is whether the state of the law" at the time of the incident provided "fair warning" to the

defendants "that their alleged [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730,741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).

To establish objective unreasonableness, Plaintiff must establish that no objectively reasonable police officer would have acted the way Gillen did on the occasion in question based upon clearly established law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). Similarly, "[i]n the Fifth Circuit, a governmental official is entitled to qualified immunity unless *all reasonable officials* would have realized that the challenged conduct was proscribed by law." *Cooper v. Morales*, 535 Fed. App'x. 425, 429 (5th Cir. 2013)(emphasis added)(citing *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Griggs*, 841 F.3d at 313 (citing *Tarver*, 410 F.3d at 750)). "Accordingly, 'qualified Immunity represents the norm,' and courts should deny a defendant immunity only in rare circumstances." *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020); *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)(Commanding that courts "must think twice before denying qualified immunity" and noting "clearly established law comes from holdings, not dicta," "overcoming qualified immunity is especially difficult in excessive force cases … 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue[,]" and finally

noting, the United States Supreme Court has exercised the extraordinary remedy of summary reversal of lower courts that denied qualified immunity  11 times in the 5 years preceding 2016).

Finally, as stated above, the objective reasonableness analysis of Officer Gillen's actions must be evaluated from the perspective of a reasonable officer on the scene and not 20/20 vision of hindsight, and must make allowances for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force necessary in a particular situation. *Griggs*, 841 F.3d at 315.

Considering prong one above, Gillen has established above, he did not violate current Fourteenth Amendment constitutional excessive force law.  Thus, Plaintiff has failed to sustain his burden, and Defendant Gillen is entitled to qualified immunity.

Considering prong two above, the *general* Fourteenth Amendment law existing at the time of the incident at issue was similar to the law today, and requires Shaw to establish Officer Gillen used objectively unreasonable force purposefully/knowingly against Shaw.   However, this general law, although providing parameters for the use of force in a jail setting, is not the sort of particularized law required by the qualified immunity analysis, nor which puts an

officer on notice that what he is doing violates the Constitution, nor puts the issue beyond debate.

In that regard, it is Gillen's position there was no then existing factually similar case  issued by the United States Supreme Court, or the Fifth Circuit, that proscribes the level of force Gillen used in responding, in the custodial detention context, to a detainee who not only assaulted Gillen, but resisted all the officers, and was physically/verbally non-compliant with Gillen's repeated commands to stop. Further, Plaintiff has not adequately addressed Gillen's qualified immunity issue in his Complaint, as he simply ***concludes*** Gillen's is not entitlement to same. *See* Doc. 45, 68, and generally.   Further, below, Defendant presents then existing case law which supports Gillen's actions in dealing with a handcuffed, non-complaint, resisting, detainee both ***before and after*** the detainee assaults him by kicking/kneeing him in the shin/groin.

Framing the primary use of force facts in this case, it is undisputed Officer Gillen only used physical strength/skill in response to Plaintiff's assault, and to preserve order/security in the jail, by simply holding onto Plaintiff and twisting to control Shaw, as Shaw pushed into and past Gillen and a Correctional Officer, in Gillen's attempt to prevent Shaw from further assaulting Gillen, or others present. It is also undisputed that this 50 second event evolved rapidly, involved split-second decisions, and should not be second guessed with 20/20 hindsight.  Gillen's response

36

was objectively reasonable, quick, limited and effective.  Further, no existing case law at the time proscribed Gillen's reaction.

In fact, Gillen has located analogous excessive force case law which clearly allowed officers to retain their  qualified immunity for actions similar to Officer Gillen's actions (*i.e.*, grabbing,  twisting and going to the ground with handcuffed arrestee/prisoner/detainee, after repeated physical resistance/non-compliance and/or being kicked/attacked).[6]  Although the *Griggs* decision is premised upon a qualified

---

[6] Defendant notes analogous case law where qualified immunity was upheld in various excessive force cases. *See Craig v. Martin*, 2022 U.S. Dist. LEXIS 25242 at * 20-24 (trial court reversed and qualified immunity granted in a Fourth Amendment case**,** because no case law gave an officer fair notice that the officer's use of force actions described in f. n. 5 above – **pain maneuver, throat strike, take down and kicking while handcuffed** - upon resisting plaintiffs, was unlawful or violated the constitution); *Priest v. Grazier*, 860 Fed. Appx. 343, 347-349 (5th Cir. 2020)(qualified immunity affirmed in a Fourth Amendment case with respect to resisting and non-compliant plaintiff where officers took plaintiff to the pavement on broken glass and placed their body weight on plaintiff, struck plaintiff 3 times while trying to handcuff plaintiff, and **kneed plaintiff in the back after he was handcuffed**, as their actions did not violate clearly established law); *Narro v. Edwards*, 829 Fed. Appx. 7, 12-13 (5th Cir. 2020)(qualified immunity affirmed with respect to **a resisting and noncompliant handcuffed pretrial detainee, where officers took him to the ground after he pulled away, kicked, and threatened the officers**, as there was no settled authority to put the officers on notice that their use of force violated the detainee's constitutional rights.);  *Brewer v. Geerdes*, Civ. Act. No. H-19-1219, 2020 U.S. Dist. LEXIS 177399, at * 25-26 (S.D. Tex. Sept. 28, 2020)(Eighth Amendment case where the Court found qualified immunity, as the record does not support an inference that [the] use of force was objectively unreasonable …" **where  the handcuffed and shackled inmate  was allegedly "slammed [to] the ground," or taken to the ground**, as  the inmate had "**lunged toward the officers**," and was **actively resisting** being escorted, and the "video does not show additional force" once the inmate was on the ground.); *Waddleton,* 750 Fed. Appx. at 254-55 (**Eighth Amendment case, the court found no excessive**

**force and granted qualified immunity where, as described in f. n. 5 above, plaintiff was taken down while handcuffed, after the inmate suddenly made a threatening movement away from the wall and toward the correctional officers and resisted restraint)**; *Johnson,* 2022 U.S. Dist. LEXIS 163686, at * 11-13 (the court granted qualified immunity where, as described in f. n.6 above, detainee was **pushed into his cell while handcuffed and shackled** sustaining injury, as this action was not shown to violate clearly established law.); *Sanchez,* 569 F. Supp. 3d at 511-14(the court granted qualified immunity where, as described in f. n. 5 above, detainee repeatedly **refused to comply with orders given and walked away**, which resulted in taking plaintiff to the floor before he was handcuffed, **and plaintiff pulled away after he was handcuffed and had to be taken to the floor again, to apply leg shackles**, as this action was not excessive force in violation of the Fourteenth Amendment.).  There are also a number of cases, through the summer of 2022, still finding qualified immunity for taking plaintiff to the ground, where the plaintiff is **not** handcuffed, but is **nevertheless non-complaint and resisting**. *See Tennyson v. Villarreal,* 801 Fed. Appx. 295, 295-96 (5th Cir 2020)(the trial court was reversed and summary judgment on qualified immunity was granted because officers at the jail were *not* objectively unreasonable even if they took the non-compliant detainee down to the ground in order to handcuff him, as the detainee refused to face the wall and put his hands behind his back for handcuffing); *Holm v. Sassenhagen*, 2022 U.S. App. LEXIS 24138, at * 7-8 (5th Cir. Aug. 26, 2022)(the trial court finding of qualified immunity was affirmed, as there was no case law that the take down was objectively unreasonable, when attempting to restrain a verbally and physically aggressive pretrial detainee, after seeking compliance with verbal commands.); *Tucker v. City of Shreveport*, 998 F.3d 165, 173-181 (5th Cir. 2021)(the trial court was reversed and qualified immunity was granted with respect to *alleged* excessive force during a takedown, as the court found no applicable jurisprudence providing fair warning to the officers that taking plaintiff to the ground under the circumstances presented – plaintiff did not initially pull over and had exhibited increasing anger, and then, while an officer attempted to pull plaintiff's arm back to handcuff him, plaintiff became upset, yelling, cussing, tensing up, and pulled his arm - would constitute excessive force.); *Defrates v. Podany*, 789 Fed. Appx. 427, 434-35 (5th Cir. 2019)(the trial court finding of qualified immunity was affirmed, as there was no identified case law clearly placing the unreasonableness of the officer's action under the circumstances beyond debate, where plaintiff dismissed verbal commands of an off duty police officer, and then, physically resisted the officer's attempt to bring plaintiff's arms behind his back and stated he had done nothing wrong, and the officer then used a takedown maneuver to take plaintiff to the ground, and when plaintiff attempted to get up, kneed plaintiff in the neck/ area to keep him down, and

immunity Fourth Amendment excessive force case involving an arrestee,[7] the Fourth Amendment Constitutional protections afforded the arrestee in *Griggs* (*i.e.*, an injury, resulting from force that was excessive to the need and was objectively unreasonable), are arguably at least equal to, those afforded under the Fourteenth Amendment (as described above in *Kingsley*) to the Plaintiff pretrial detainee at the time of the incident at issue here (*i.e.*, an injury caused by an alleged objectively unreasonable use of force). *See Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016). So, it is Gillen's position, the Fifth Circuit finding the officer in *Griggs* entitled to qualified immunity under a Fourth Amendment excessive force standard, based upon more egregious, but analogous, facts, supports a finding of Gillen's qualified immunity under a Fourteenth Amendment excessive force standard.

In *Griggs*, an intoxicated arrestee driver was being handcuffed and resisted and/or lurched and/or repeatedly said "no," and/or kicked before and/or after being

---

placed him in a wrist hold, and placed pressure on his head, as the officer's actions were measured and ascending responses to plaintiff's persistent resistance); and *Fairchild v. Coryell County*, 40 F.4th 359, 367-68 (5th Cir. 2022)(there was no case law negating or overcoming qualified immunity for officers who threw a mentally deficient non-compliant pretrial detainee to the ground in response to her repeatedly tapping the cell brush on the cell door after having first given plaintiff verbal commands to stop and using pepper spray; the court also held that the subsequent knee strikes and punches where not clearly excessive, given the need to subdue a resisting non-compliant plaintiff who had taken the officer's handcuffs).

[7] To the extent Plaintiff makes a Fourth Amendment excessive force claim, this case is dispositive of his claims.

handcuffed, which resulted in the officers using various forms of force. *Griggs*, 841 F.3d at 308.

Regarding taking the suspect to the ground, the Court held the clearly established law does not establish that same was constitutionally unreasonable with respect to a suspect who is drunk, erratic and resisting arrest. *Id.* at 315. With respect to continuous close-fisted punching of the arrestee (on the back of the head and elsewhere) while on top of him, the court noted there was no law presented which established it was unreasonable for an officer to use non-deadly punches to gain control of the arms of a drunken, non-compliant, resisting suspect. *Id.* With respect to getting on top of the arrestee's legs and delivering a closed-fisted punch to the face, as the arrestee was sitting *hand-cuffed*[8] in the patrol car seat, the Court found

---

[8] Regarding handcuffs, in *United States v. Sanders*, 994 f.2d 200, 209 (5th Cir. 1993) the Fifth Circuit Court noted the following: "Handcuffs are a temporary restraining device; they limit but do not eliminate a person's ability to perform various acts. They obviously do not impair a person's ability to use his legs and feet, whether to walk, run, or kick. Handcuffs do limit a person's ability to use his hands and arms, but the degree of the effectiveness of handcuffs in this role depends on a variety of factors, including the handcuffed person's size, strength, bone and joint structure, flexibility, and tolerance for pain. Albeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person, or within lunge reach, and in so doing to cause injury to his intended victim, to a bystander, or even himself. Finally, like any mechanical device, handcuffs can and do fail on occasion. The limitations of handcuffs' effectiveness are widely known to law enforcement personnel… Despite this widespread knowledge, in 1991 alone … at least four police officers were killed by persons who had already been handcuffed;" *Kitchen*, 759 F.3d 479, f. n. 30 ("… we emphasize that we do not endorse a per se rule that no force may ever be used after an inmate has been

the arrestee was "clearly *not* subdued and under restraint; [as] if he were, he would not have been able to physical assault [kick the officer]." *Id.* at 316.   The Court noted, "… as it were, the punch was effective for its purpose – [the arrestee] immediately curled up into the back of the police car, and [the officer] was able to close the door." *Id.*

The Court summarized "the use of force was the sort of 'split-second judgment' in a difficult situation that qualified immunity is designed to protect." *Id.* (citation omitted).   The *Griggs* decision held, "we conclude that no material fact exists and that none of [the officer's] conduct in effecting the [] arrest was objectively unreasonable in the light of clearly established law… [the officer] is entitled to qualified immunity." *Id*.

Comparing *Griggs* to the incident here, the facts are strikingly similar, as Shaw was also highly intoxicated, erratic, unpredictable, resisted arrest during handcuffing, and was thereafter resisting and noncompliant, as even though handcuffed, Shaw actively, resisted officers in the jail, failed to comply with numerous orders to stop, and assaulted Gillen in the jail facility by kicking and/or kneeing Gillen in the groin.   Similar to the *Griggs* officer, Gillen responded (with much less force – no punch), as, after this intentional assault, Gillen made a split-

---

subjected to measures of restraint – particularly if the effect of the restraint is only partial," such as handcuffs.).

second judgment to grab Plaintiff with both hands, as Shaw pushed off the wall and tried to push sideways through and past Gillen and a Correctional Officer, who were previously trying to hold Shaw against the wall, and due to Shaw's momentum/impact, Gillen twisted and looked over his shoulder in an attempt to control the fall, as they both went to the ground.

Gillen is entitled to Qualified immunity here, as Plaintiff has put forth no pleading addressing same, nor any evidence, indicating Gillen knowingly violated the Fourteenth Amendments rights of Shaw, nor pointed to any clearly established law at the time indicating Gillen's actions were objectively unreasonable, and/or that no officer would have acted as Gillen did on the date of the incident.

## CONCLUSION

Appellee requests that the district court's decision granting final summary judgments in favor of Defendant Appellee James Gillen be affirmed and upheld.

**[SIGNATURE ON NEXT PAGE]**

Respectfully submitted by,

**CALVERT EAVES CLARKE & STELLY, L.L.P.**
Beaumont Tower
2615 Calder Avenue, Suite 1070
Beaumont, Texas 77702
Phone:   (409) 832-8885
Fax:       (409) 832-8886


By: _____
        Alex J. Stelly, Jr.
        Texas State Bar No.: 00791728
        astelly@calvert-eaves.com
        F. Blair Clarke
        Texas State Bar No.:  04316560
        fbclarke@calvert-eaves.com

**ATTORNEY FOR APPELLEE, JAMES GILLEN**


## CERTIFICATE OF SERVICE

I certify that on the _8th_ day of September, 2025, the foregoing document

was furnished to all counsel of record by electronic filing.


_____
Alex J. Stelly, Jr.

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P.
    32(a)(7)(B) because, excluding the parts of the document exempted by FED. R.
    APP. P. 32(f), and 5th CIR. R. 32.1: this document contains 10,336 words.

2.  This document complies with the typeface requirements of FED. R. APP. P.
    32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P.
    32(a)(6) because this document has been prepared in a proportionally spaced
    typeface using Microsoft Word for Microsoft 365 MSO (Version 2504 Build
    16.0.18730.20122) 64 bit and is in a Times Roman style.

Alex J. Stelly, Jr.